NOT FOR PUBLICATION

# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MINAXIBEN TALSANIA and<br>HASMUKH TALSANIA,<br><br>           Plaintiffs,<br><br>    v.<br><br>KOHL'S DEPARTMENT STORE,<br>JOHN DOES 1-5 (fictitious), and<br>ABC CORPS. 1-5 (fictitious)<br><br>           Defendants. | Hon. Harold A. Ackerman<br><br>Civil Action No. 05-3892 (HAA)<br><br>**OPINION AND ORDER** |

Glenn C. Slavin, Esq.
SLAVIN & MORSE, LLC
234 Main Street
Woodbridge, New Jersey 07095
*Attorneys for Plaintiffs*

James Louis Sonageri, Esq.
Neil S. Weiner, Esq.
SONAGERI & FALLON
411 Hackensack Avenue
Hackensack, New Jersey 07601
*Attorneys for Defendant Kohl's Department Store*

**ACKERMAN, Senior District Judge:**

      This matter comes before the Court on the motions in limine filed by Plaintiffs Minaxiben and Hasmukh Talsania and Defendant Kohl's Department Store ("Kohl's"). For the following reasons, this Court will deny Plaintiffs' motion (Doc. No. 38) and grant in part Defendant's motion (Doc. No. 39).

*Background*

On the morning of December 6, 2003, Minaxiben Talsania, her husband Hasmukh, and their son visited Kohl's Department Store in the Mill Creek Mall in Secaucus, New Jersey for an "early bird sale." As the family entered the store, Mrs. Talsania slipped and fell on the floor. Plaintiffs filed suit, claiming that Kohl's negligence caused Mrs. Talsania's fall and resulting injuries. The case is set for a jury trial, which will commence May 28, 2009.

With the present in limine motions, the parties seek rulings on the admissibility of evidence and statements concerning two discrete events that occurred in the aftermath of Mrs. Talsania's fall. First, Plaintiffs intend to introduce a portion of Mrs. Talsania's deposition testimony of August 18, 2006, wherein she stated that one of Kohl's assistant managers summoned a store employee to mop the area where she fell and place a sign nearby alerting customers of the hazard. Second, Kohl's plans on cross-examining Mrs. Talsania about deposition testimony that contradicted her certified answers to interrogatories; whereas Mrs. Talsania's interrogatory answers indicated that she fell on a piece of wet cardboard (*see* Slavin Decl., Ex. A, "Interrogatory Answers" ¶¶ 9, 11, 12(a)), her deposition testimony repeatedly disavowed the notion that there was anything on the floor, save for a wet spot, that caused her to slip (*see* Dep. of M. Talsania at 18:13–19:2, 28:17–32:05).

Plaintiffs now move in limine for an order prohibiting Kohl's from raising Mrs. Talsania's contradictory sworn statements about the cause of her fall; Kohl's requests a contrary order in its motion. Defendant also moves in limine for an order prohibiting Plaintiffs from mentioning that a store employee mopped the floor and placed a warning sign on the spot where Mrs. Talsania fell. Additionally, Kohl's seeks an order compelling Plaintiffs to prove that the

store had notice of the dangerous condition at the time of the incident, and also asks for appropriate jury charges reflecting Plaintiffs' burden.

*Discussion*

**I.       Inconsistent Statements**

Plaintiffs argue that this Court should prohibit Kohl's from exploring Mrs. Talsania's contradictory statements in the presence of the jury for the following reasons: (1) the reference to cardboard in the earlier interrogatory answers was a typographical error; (2) Mrs. Talsania recanted those statements in sworn testimony more than two years ago; and (3) the parties have since stipulated that there was no wet cardboard on the floor when she fell, as reflected by the Final Pretrial Order.  Plaintiffs submit that Mrs. Talsania cannot read, speak, or write in the English language, and that she completed the interrogatories with the assistance of her English-speaking daughter.  Thus, Plaintiffs argue, Kohl's should not be permitted to cross-examine Mrs. Talsania about the contradictory statements, because such questioning would serve no purpose other than embarrassing Mrs. Talsania and her attorney, or diverting attention from the central issues of the case.

Not so, says Defendant.  Kohl's contends that the inconsistent statements are relevant to the jury's consideration of Mrs. Talsania's credibility, and Federal Rule of Evidence 611(b) permits parties to cross-examine a witness on any matter that affects witness credibility.  As the key witness to Plaintiffs' claims, her credibility will necessarily factor into the jury's determinations of liability and damages, Defendant argues.

Federal Rule of Evidence 611(b) limits cross-examination "to the subject matter of the direct examination and matters affecting the credibility of the witness," but grants district courts

the discretion to "permit inquiry into additional matters as if on direct examination."  This Court agrees with Kohl's that Mrs. Talsania's answers to interrogatories are relevant to her credibility. Mrs. Talsania is the primary witness for Plaintiffs' claims; she is the victim of Defendant's alleged negligence.  The believability of her account of the environmental factors that precipitated her fall, how she fell, and the degree of her injuries necessarily will factor into the jury's assessment of liability and damages.  Thus, unless this Court finds that the probative value of the inconsistent statements "is substantially outweighed by the risk of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay," *see* Fed. R. Evid. 403, Rule 611(b) permits Defendant to introduce this matter during cross-examination in the presence of the jury, *see* Fed. R. Evid. 402 ("All relevant evidence is admissible, except as otherwise provided by [law.]").

     Plaintiffs have not convinced the Court that the probative value of the inconsistent statements is *substantially* outweighed by the risk of unfair prejudice, diversion of issues, or undue delay.  Indeed, the Court finds most beguiling Plaintiffs' explanation of the differing accounts of the fall: "a typographical error in transcription."  (Pls.' Br. at 4.)  Mrs. Talsania, by virtue of her daughter's translations, referred to wet cardboard three separate times in her answers to interrogatories, responding to questions about the location of her fall, the manner in which the accident occurred, and whether her fall resulted from a defective condition. Regarding the location of the fall, Mrs. Talsania stated that the fall occurred "[i]nside the main entrance to Kohl's.  The floor had been covered with cardboard, which was wet and slippery." (Slavin Decl., Ex. A, "Interrogatory Question and Answers" ¶ 9.)  As for the nature of the accident, she answered, "Plaintiff slipped on the wet snow and ice covered cardboard that the

defendants placed at the entranceway to the store." (*Id.* ¶ 11.) Lastly, she asserted the following defective condition: "Cardboard placed on the floor near the entranceway was wet and slippery." (*Id.* ¶ 12(a).) Two of the answers indicate that an object had been physically *placed* on the floor, and one of the answers affirmatively states that the object had been placed there by Defendants, suggesting that either Kohl's or one of its cleaning service agents had participated in creating the defective condition by placing the cardboard on the floor. (*See* Compl., First Count ¶ 2, Second Count ¶¶ 2–3.) However, in her August 18, 2006 deposition, Mrs. Talsania testified that the floor "was just wet," and that there was "nothing else" on the floor when she fell. (Dep. of M. Talsania at 18:20, 19:2; *see also id.* at 30:19–31:16.) When presented with the inconsistency of her interrogatory answers, Mrs. Talsania stated that she gave her daughter truthful answers to the questions asked; that her daughter read the questions and answers to her; and that, when asked by her daughter about her answer that she had fallen on wet cardboard, she told her daughter there was nothing on the floor when she fell. (*Id.* at 30:11, 31:19, 31:23–32:4.)

Cognizant of the fact that Mrs. Talsania completed both the deposition and the interrogatory answers with the assistance of an interpreter, as well as the possibility that the quality of interpretation services differed between the two occasions,[1] the Court is confounded by the suggestion that a mere scrivener's error produced Mrs. Talsania's different accounts of the floor condition that caused her fall. *There was wet cardboard* simply conveys a very different idea than *there was a puddle of water on the floor and nothing else*.

Even though the parties have stipulated that wet cardboard did not cause Mrs. Talsania's

---

[1] During her deposition, Mrs. Talsania asserted that her daughter, who provided her with interpretive services during the completion of the interrogatory answers, was fluent in English. (Dep. of M. Talsania at 28:7–9.)

fall, Kohl's has a legitimate reason for introducing these contradictory statements: impugning the credibility of the victim of the alleged negligence. Accordingly, this Court will permit Kohl's to cross-examine Mrs. Talsania about the inconsistent statements and refer to those statements in its opening and closing arguments. Mrs. Talsania will have ample opportunity to explain the inconsistency appearing in her interrogatory answers and deposition testimony on direct examination or redirect, during which time jurors may gauge the veracity of Mrs. Talsania's prior and contemporaneous statements. Of course, this Court will closely monitor Kohl's method of questioning Mrs. Talsania to ensure that the process is "effective for the ascertainment of the truth," to avoid unnecessary delay, and to protect her from "harassment or undue embarrassment." *See* Fed. R. Evid. 611(a).

## II.     Subsequent Remedial Measures

Kohl's argues that Federal Rule of Evidence 407 bars Plaintiffs from introducing evidence or otherwise inquiring about the department store's subsequent remedial measures because Kohl's does not contest ownership and control of the premises, nor does it contest the feasibility of precautionary measures. Plaintiffs respond that Rule 407 permits this evidence because Kohl's denies that there was a wet spot on the floor when Mrs. Talsania fell. Indeed, Plaintiffs contend that the evidence "[would be] used to prove the existences [sic] as a matter of fact, that the floor was wet," as opposed to establishing their negligence claim against Defendant. (Pls.' Resp. Br. at 3.) Plaintiffs are mistaken.

Plaintiffs misconstrue the fundamental purpose of Rule 407.[2] The Rule bars introduction

---

[2]Federal Rule of Evidence 407 states in full:

When, after an injury or harm allegedly caused by an event, measures

of subsequent remedial measures because the evidence creates an inference of culpability. *See, e.g.*, *Diehl v. Blaw-Knox*, 360 F.3d 426, 430 (3d Cir. 2004) (recognizing, in the products liability context, that civil defendants would be discouraged from taking safety measures if the measures could be introduced as evidence of prior wrong-doing). "The reason for the [Rule 407] exclusion is to encourage post-accident repairs or safety precautions in the interest of public safety." *Kenny v. Se. Pa. Transp. Auth.*, 581 F.2d 351, 356 (3d Cir. 1978) (citation omitted).

      Rule 407, by its express language, does permit evidence of post-accident safety measures for the limited purpose of "proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment [of a witness]," but it forbids use of this evidence "to prove negligence, culpable conduct, . . . or a need for a warning or instruction." Here, Plaintiffs acknowledge that they seek to introduce evidence that Kohl's ordered the mopping and placement of a warning sign near the fall site to corroborate their claim of a dangerous condition—specifically, a wet spot on the floor. Without the existence of a dangerous condition, Plaintiffs cannot establish the requisite duty for their negligence claim. Rule 407 was specifically designed to prevent such uses of subsequent remedial measure evidence. Plaintiffs do not suggest that Kohl's contests ownership, control, or the feasibility of precautionary measures, nor do they purport to impeach an agent of the store on the basis of prior inconsistent

---

> are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

statements. Thus, Plaintiffs present no legitimate basis for introducing this evidence.

Therefore, this Court will grant Kohl's motion and bar Plaintiffs from referencing the store's subsequent remedial actions, including, but not limited to, mopping the floor and posting a warning sign near the site.

### III.     Notice Requirement

Lastly, Kohl's requests an order compelling Plaintiffs to prove that it had prior notice of the dangerous condition, as well as a jury charge reflecting the notice requirement and excluding the "mode of operation" exception recognized by New Jersey law. *See Bozza v. Vornado Inc.*, 42 N.J. 355, 360 (1964). With regard to Kohl's request for an order, this Court has no occasion to order Plaintiffs to prove a particular element of their claim. If Kohl's believes that Plaintiffs failed to establish any portion of their case at trial, it may move for judgment as a matter of law at the close of either party's case-in-chief pursuant to Federal Rule of Civil Procedure 50. To the extent that Kohl's seeks an order compelling Plaintiffs to prove notice, this Court will deny Defendant's motion.

With regard to Kohl's request for specific jury charges, the Court will reserve judgment until the charge conference after both parties have concluded their cases-in-chief. The Court notes, however, that Plaintiffs do not presently object to Kohl's requests pertaining to the notice requirement.

### *Conclusion & Order*

For the foregoing reasons, the Court hereby ORDERS that Plaintiffs' motion in limine (Doc. No. 38) is DENIED, and Defendant's motion in limine (Doc. No. 39) is GRANTED IN PART and DENIED IN PART. Accordingly, the Court hereby ORDERS the following:

8

1) Kohl's may cross-examine Mrs. Talsania regarding the inconsistency in her prior statements regarding the condition of the floor on which she fell, and, further, may reference this inconsistency in their opening and closing arguments;

2) Plaintiffs are prohibited from presenting evidence of, or making reference to the same, any subsequent remedial action taken by Kohl's in the aftermath of the fall, including, but not limited to mopping and placement of warning signs; and

3) to the extent that Kohl's seeks an order compelling Plaintiffs to prove that Kohl's had notice of the alleged dangerous condition before the accident occurred, Defendant's motion (Doc. No. 39) is DENIED.

The Court reserves judgment on Defendant's motion to the extent that it seeks specific jury charges until the parties convene for the charge conference at the end of the trial.


Dated: May 20, 2009
Newark, New Jersey

/s/ Harold A. Ackerman
U.S.D.J.