NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MINAXIBEN TALSANIA and <br> HASMUKH TALSANIA, <br><br> Plaintiffs, <br><br> v. <br><br> KOHL'S DEPARTMENT STORE, <br> JOHN DOES 1-5 (fictitious), and <br> ABC CORPS. 1-5 (fictitious) <br><br> Defendants. | Hon. Harold A. Ackerman <br><br> Civil Action No. 05-3892 (HAA) <br><br> **MEMORANDUM OPINION** |

Glenn C. Slavin, Esq.
SLAVIN & MORSE, LLC
234 Main Street
Woodbridge, New Jersey 07095
*Attorneys for Plaintiffs*

James Louis Sonageri, Esq.
Neil S. Weiner, Esq.
SONAGERI & FALLON
411 Hackensack Avenue
Hackensack, New Jersey 07601
*Attorneys for Defendant Kohl's Department Store*

**ACKERMAN, Senior District Judge:**

On Thursday, May 28, 2009, in a ruling from the bench, this Court denied Plaintiffs'

motion (Doc. No. 43) for reconsideration of a portion of this Court's May 20, 2009 Opinion &

Order (Doc. No. 42, hereinafter "May 20 Order"). That Order, in relevant part, granted

Defendant's motion in limine pursuant to Federal Rule of Evidence 407, effectively barring

1

Plaintiffs from presenting evidence or otherwise referring to subsequent remedial measures allegedly employed by Defendant. The Court now sets forth its reasons for denying Plaintiffs' motion for reconsideration, as well as guidance to the parties regarding how this Court will enforce its ruling on this matter.

## *Background*

On the morning of December 6, 2003, Minaxiben Talsania, her husband Hasmukh, and their son visited Kohl's Department Store in the Mill Creek Mall in Secaucus, New Jersey for an "early bird sale." As the family entered the store, Mrs. Talsania slipped and fell on the floor. Mr. and Mrs. Talsania filed suit against Kohl's Department Store, Inc., ("Kohl's") claiming that the department store's negligence, in the form of a wet spot on the floor, caused Mrs. Talsania's fall and resulting injuries.

With the present motion, Plaintiffs renew their effort to introduce evidence that a Kohl's employee mopped the portion of floor where Mrs. Talsania fell after the accident occurred.[1] In this Court's May 20 Order, the Court held that such evidence constituted an inadmissible subsequent remedial measure because Plaintiffs had not demonstrated a permissible use for the evidence under the exceptions to Federal Rule of Evidence 407. As they did in opposing the initial motion in limine, Plaintiffs argue that the evidence, consisting of their own deposition testimony regarding the event, is admissible for impeachment purposes to challenge the

---

[1] Initially, Plaintiffs also sought to introduce evidence that a Kohl's employee placed a warning sign next to the fall site after the incident. Plaintiffs' motion for reconsideration does not contest the May 20 Order to the extent that it barred Plaintiffs from discussing the warning sign in the presence of the jury. (Pls.' Br. at 3 ("Additionally, the plaintiff concedes that the placement of the warning signage by the defendant's employee after the mopping exercise should not come into evidence . . . .").) Accordingly, this Court has no occasion to opine further on that discrete issue.

anticipated trial testimony of a Kohl's assistant manager who previously stated in his deposition that the floor was not wet when he observed the accident scene moments after Mrs. Talsania's fall. Plaintiffs maintain that Rule 407[2] permits them to introduce this "impeachment" evidence to prove the existence of the dangerous condition at the time of the accident because Defendant contests the existence of the wet spot. Additionally, Plaintiffs argue for the first time that the alleged post-accident floor-mopping does not constitute a subsequent remedial measure under Rule 407, but rather constitutes permissible evidence of "an exercise in routine maintenance." (Pls.' Br. at 3.)

## *Analysis*

It is well settled that "[t]he purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). Courts will only grant reconsideration in the following circumstances: (1) when intervening changes in controlling law occur; (2) when previously unavailable evidence comes to light; or (3) when "necessary to correct a clear error of law or prevent manifest injustice." *Database Am., Inc. v. Bellsouth Adver. & Publ'g Corp.*, 825 F. Supp. 1216, 1220 (D.N.J. 1993) (citation omitted); *see also N. River Ins. Co. v. CIGNA Reinsurance Co.*, 52 F.3d 1194, 1218 (3d Cir. 1995). Reconsideration is "an extraordinary remedy" that is to be granted "very sparingly." *In re Lord Abbett Mut. Funds Fee Litig.*, 417 F. Supp. 2d 624, 627 (D.N.J. 2005) (citation omitted). Put another way, motions for reconsideration have a limited scope. "[A] motion for reconsideration is not an appeal." *Feit v. Great-West Life & Annuity Ins. Co.*, 460 F. Supp. 2d 632, 643 (D.N.J. 2006) (Ackerman, J.). A

---

[2] Unless expressly noted otherwise, "Rule 407" refers to Federal Rule of Evidence 407.

3

3

party may not "ask the court to rethink what it ha[s] already thought through—rightly or wrongly." *Oritani Sav. & Loan Ass'n v. Fid. & Deposit Co.*, 744 F. Supp. 1311, 1314 (D.N.J. 1990) (Ackerman, J.) (quoting *Above the Belt v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983)).

Here, Plaintiffs' motion for reconsideration must be denied because Plaintiffs failed to present a change in law, new evidence, or a clear error in this Court's prior ruling. Rather than arguing one of the three proper grounds for reconsideration, Plaintiffs presented two rationales in support of its motion: (1) that evidence from deposition testimony tending to prove the existence of a dangerous condition should be permitted for purposes of impeaching the credibility of a defense employee who will testify that the dangerous condition did not exist, and (2) that evidence of post-accident floor-mopping does not constitute a subsequent remedial measure under Rule 407. This Court previously considered and rejected the former contention in the May 20 Order, while Plaintiffs waived the latter argument by failing to raise it in opposition to Defendant's motion in limine.

Furthermore, Plaintiffs fail to present any controlling authority on behalf of either argument, relying instead on a handful of cases from New Jersey state courts applying New Jersey rules of evidence rather than the federal evidentiary rules that govern this Court. While such cases might have provided persuasive authority in consideration of the initial motion in limine, considering the similarity of the federal and state rules on subsequent remedial measures,[3]

---

[3]Federal Rule of Evidence 407 provides:

When, after an injury or harm allegedly caused by an event, measures are taken that, if taken previously, would have made the injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove negligence, culpable conduct, a defect in a product, a defect in a product's design, or a need for a warning or

4

such authority, presented for the first time in support of a motion for reconsideration, cannot demonstrate clear error. *Resorts Int'l, Inc. v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992) ("Only dispositive factual matters and controlling decisions of law which were presented to the court but not considered on the original motion may be the subject of a motion for reconsideration."); *see also* L. Civ. R. 7.1(I) (directing moving parties to include a "brief setting forth concisely the matter or *controlling* decisions which the party believes the Judge or Magistrate Judge has *overlooked*" with their motion for reconsideration) (emphasis added). Plaintiffs presented no authority whatsoever in opposing Defendant's initial motion in limine to bar evidence of subsequent remedial measures; therefore, the Court could not have overlooked these cases cited for the first time on reconsideration. In any event, these newly-cited authorities are not controlling. Plaintiffs have failed to demonstrate clear error in this Court's May 20 Order. Accordingly, this Court denied Plaintiffs' motion for reconsideration.

Beyond Plaintiffs' failure to meet the high burden for reconsideration, the clear weight of authority demonstrates that this Court's May 20 Order was correctly decided. Indeed, Federal Rule of Evidence 407 permits evidence of subsequent remedial measures for the limited purpose of impeachment, but Plaintiffs' proposed use of such evidence in this case does not fall into the

---

> instruction. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

Fed. R. Evid. 407.

By comparison, New Jersey Rule of Evidence 407 states: "Evidence of remedial measures taken after an event is not admissible to prove that the event was caused by negligence or culpable conduct. However, evidence of such subsequent remedial conduct may be admitted as to other issues." N.J. R. Evid. 407.

impeachment exception.[4]  The Third Circuit has held that courts "must interpret the impeachment exception to Rule 407 circumspectly because '*any* evidence of subsequent remedial measures might be thought to contradict and so in a sense impeach [a party's] testimony . . . .'" *Consolidation Coal Co.*, 123 F.3d 126, 136 (3d Cir. 1997) (quoting *Flaminio v. Honda Motor Co.*, 733 F.2d 463, 468 (7th Cir. 1984) (emphasis added by Third Circuit).  More specifically, our Circuit has instructed that "the evidence offered for impeachment must contradict the witness's testimony *directly*."  *Consolidation Coal Co.*, 123 F.3d at 136 (citing *Kelly v. Crown Equip. Co.*, 970 F.2d 1273, 1278 (3d Cir. 1992)) (emphasis added).  Towards this end, the Third Circuit has encouraged district courts to weigh arguments invoking the impeachment exception to Rule 407 in light of Federal Rule of Evidence 403, which permits courts to exclude evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . . ."  *See Steyck v. Bell Helicopter*, 295 F.3d 408, 416 (3d Cir. 2002); *Petree v. Victor Fluid Power, Inc.*, 887 F.2d 34, 39–40 (3d Cir. 1989); *cf.* Fed. R. Evid. 407 advisory committee's notes (recognizing that evidence admissible under an exception to Rule 407 may still be subject to exclusion under Rule 403).

Particularly instructive are two Third Circuit cases affirming the exclusion of subsequent remedial measure evidence where the plaintiff, as here, sought to use the evidence to rebut defense testimony disputing the existence of a dangerous condition: *Complaint of Consolidation*

---

[4]Rule 407 also permits evidence of subsequent remedial measures to be admitted for the limited purposes of proving ownership and control of a product or premises, as well proving the "feasibility of precautionary measures," but these permissible bases for subsequent remedial measure evidence only become available when they have been controverted by an interested party.  Fed. R. Evid. 407.  These exceptions do not apply in this case, though, because Plaintiffs have never suggested that Defendant controverted its ownership and/or control of the department store, nor have Plaintiffs suggested that Defendant has contested the feasibility of alternative and/or additional safety precautions.

*Coal Co.* and *Kelly v. Crown Equipment Co.* The former case involved an injury sustained by a deckhand during the transport of a barge across the Monongahela River; the injury appeared to have been caused when a leaving line—a special rope used for tethering barges together—broke. *See Consolidation Coal Co.*, 123 F.3d at 130–31, 136. Pursuant to Rule 407, the district court had excluded evidence that the defendant employer circulated a memo after the incident warning employees to inspect their ropes before using them. The Third Circuit affirmed, finding that the precautionary memo did not directly contradict defense testimony, provided by an assistant foreman who viewed the rope shortly after the incident, that the culprit rope appeared to have been cut by an ax. *Id.* at 137. Arguably, the defense testimony in that case may be read to implicitly deny the existence of an inherent dangerous condition by suggesting that the dangerous condition had been created by an external act that cut the rope. Likewise, in *Kelly*, the Third Circuit affirmed the district court's Rule 407 exclusion of evidence of a post-manufacture, pre-accident design change to a forklift. 970 F.2d at 1278. The plaintiff in that case attempted to use the design change evidence to impeach the defense expert's testimony that "the forklift involved in the accident was of an excellent and proper design." *Id.* But the Third Circuit rejected this argument, finding that "[the expert] did not make a statement that the forklift's design was the best or the only one possible. . . . Thus, evidence of subsequent changes cannot serve to impeach his statements."[5]

---

[5] Cases from other circuits reinforce our Circuit's decisions by demonstrating that a district court's admission of subsequent remedial measures as impeachment evidence constitutes reversible error where the evidence does not directly impeach defense testimony. The Eleventh Circuit in *Wilkinson v. Carnival Cruise Lines, Inc.* reversed the district court's inclusion of evidence that an electronic door on a cruise ship was kept in the open position after an incident where the door allegedly closed over a passenger's toes. 920 F.2d 1560, 1567–69 (11th Cir. 1991). At trial, the district court had permitted the plaintiff to use this evidence to impeach a defense witness (a cruise ship employee) who testified that the door was functioning in "normal

In light of this precedent, Plaintiffs' deposition testimony that a store employee mopped the floor does not directly contradict the deposition testimony of the Kohl's employee that the floor was not wet when it was viewed shortly after the accident. Based on the parties' submissions, it does not appear that the Kohl's assistant manager has testified or intends to testify that the store had taken all possible safety precautions before Plaintiffs arrived, or that the floor was in the safest possible condition. Rather, the assistant manager's deposition testimony merely denies that the floor was wet when he observed the floor. (Slavin Decl. in Opp. to Def.'s Motion in Limine, Ex. A, Dep. C. Carmello at 43:22–25.) This mere denial of a dangerous condition resembles the denials of negligence and dangerous conditions that our Circuit found did not open the door under Rule 407 for subsequent remedial evidence in *Consolidation Coal Co.* and *Kelly*. Thus, under the standard articulated by this Circuit in *Consolidation Coal Co.*, Plaintiffs cannot meet the requirements for the impeachment exception to Rule 407. "Defining the term

---

operating condition" when he inspected the door shortly after the accident. *See id.* at 1564, 1568. On appeal, the *Wilkinson* court held that the subsequent remedial measure testimony—that the doors were kept open after the accident—did not impeach the defense witness's testimony denying the existence of a dangerous condition at the time of the accident. *Id.* at 1568. Moreover, so long as the defense witness did not suggest that the ship's crew had taken "all reasonable care" or that the door was in the safest possible condition, the defense witness had not triggered another Rule 407 exception by controverting the feasibility of precautionary measures. *Id.*

Likewise, in a case involving factual circumstances very similar to the matter before this Court, a panel of the Fifth Circuit in *Relf v. Wal-Mart Stores, Inc.* overturned a district court's admission of evidence that the store filled a depression in the floor with cement in the aftermath of a slip-and-fall accident. 49 F.3d 728, No. 94-30335, 1995 WL 103360, at *2–4 (5th Cir. 1995) (unpublished per curiam opinion). The *Relf* panel rejected the plaintiff's argument that the subsequent remedial measure evidence qualified for the impeachment exception, *id.* at *2 n.7 (noting that the plaintiff failed to identify how the evidence impeached defense testimony), and further reasoned that "a defendant does not open the door to evidence of subsequent remedial measures merely by arguing that it was not negligent or that a dangerous condition did not exist," *id.* at *3 (footnote citing *Wilkinson* omitted).

This Court is persuaded that *Wilkinson* and *Relf* properly apply Rule 407 and are in harmony with the Third Circuit's decisions in *Consolidation Coal Co.* and *Kelly*.

'impeachment' in a less stringent manner would permit the exception to swallow the rule . . . ." *Kelly*, 970 F.2d at 1278.

Furthermore, this Court is convinced that the post-accident floor-mopping evidence should be excluded under Rule 403, because the evidence would have little probative value that would be substantially outweighed by the dangers of unfair prejudice and confusing the jury of the true issues presented by this case. *See* Fed. R. Evid. 403. The mopping of a floor after someone has fallen could lead to many possible inferences, of which Plaintiffs' chosen inference is but one. Floor-mopping can indicate that the floor was wet, sticky, or otherwise obstructed by debris when it was observed after the incident; floor-mopping can suggest that the department store was conducting routine maintenance; or floor-mopping might mean that the store was merely taking precautions to prevent future accidents. The primary rationale for Rule 407's exclusion of subsequent remedial measures is to encourage defendants to take such post-accident precautions by eliminating the inference that defendants were negligent in the first place. *See Kenny v. Se. Pa. Transp. Auth.*, 581 F.2d 351, 356 (3d Cir. 1978) (citation omitted) ("The reason for the [Rule 407] exclusion is to encourage post-accident repairs or safety precautions in the interest of public safety.").

For all the inferences that post-accident floor-mopping could raise, it does not necessarily indicate that the floor was wet before Plaintiffs arrived, and it hardly proves that the floor was wet when Mrs. Talsania fell, but these are precisely the inferences Plaintiffs want the jury to make: that Defendant mopped the floor because it knew it was at fault for not preventing the accident. If this Court were to admit Plaintiffs' floor-mopping evidence, then the impeachment

9

would become the rule and exclusion the exception to Rule 407.[6] Plaintiffs argue that the purpose of Rule 407 "is to encourage parties to act voluntarily to make a harm less likely to occur. The defense, in this case, has not acted 'voluntarily' they [sic] acted because the plaintiff fell." (Pls.' Br. at 3.) Yet Plaintiffs misconstrue the fundamental purpose for this exclusionary rule: to encourage parties, *after* an incident has occurred, to take precautionary steps to prevent *future* injuries. After all, parties cannot voluntarily undertake *subsequent remedial* measures to prevent an accident that has already occurred. Admission of the floor-mopping evidence here would violate the very policy Rule 407 seeks to advance.

With regard to Plaintiffs' newfound contention that the floor-mopping constituted routine maintenance rather than an inadmissible remedial measure—a theory that contradicts Plaintiffs' own assertion that the floor-mopping creates an inference that corroborates their assertion that the floor was wet when Mrs. Talsania fell—the Court is aware of no compelling authority that

---

[6]The Court notes that New Jersey courts appear to have interpreted New Jersey Rule of Evidence 407 (formerly New Jersey Evidence Rule 51) differently than the federal courts have applied the similar rule in the Federal Rules of Evidence, in that New Jersey law permits subsequent remedial measure evidence to prove the existence of a dangerous condition. *See, e.g.*, *Harris v. Peridot Chem. (N.J.), Inc.*, 313 N.J. Super. 257, 293 (App. Div. 1998); *Millman v. U.S. Mortgage & Title Guar. Co. of N.J.*, 1 A.2d 265, 268 (N.J. 1938). Perhaps this difference can be attributed to the broader language of the exceptions clause in the New Jersey Rule. *See supra* note 3. But this Court need not speculate as to the reason why these two similar rules of evidence have been interpreted and applied differently by the federal and state courts. Despite Plaintiffs' unusual reliance solely upon New Jersey state court cases in their motion for reconsideration before this federal court, Plaintiffs have not argued that the substantive differences between the Federal Rules of Evidence and the New Jersey Rules of Evidence require this Court, sitting in diversity, to apply the New Jersey Rules. However, even if they had, the Third Circuit has expressly rejected the argument that federal courts employing diversity jurisdiction should apply the state subsequent remedial measure rule instead of Federal Rule of Evidence 407. *Kelly*, 970 F.2d at 1277–78. Accordingly, this Court is bound to apply the Federal Rules of Evidence and the standards dictated by the United States Court of Appeals for the Third Circuit.

would suggest that the post-accident floor-mopping in this case would be exempted from Rule 407's exclusionary rule for subsequent remedial measures. The Rule expressly applies to "measures . . . taken that, if previously taken, would have made the injury or harm less likely to occur . . . ." Fed. R. Evid. 407. Presuming an injury sustained from slipping on a wet portion of the floor, any form of competent mopping would surely qualify as a *measure* that would have made the harm of falling on the wet spot less likely to occur. Federal courts have recognized that Rule 407 applies to a variety of post-incident measures that did not alter the design of the dangerous condition, including the issuance of a safety memo and the keeping of an electronic door in the open position. *See Consolidation Coal Co.*, 123 F.3d at 136–37 (safety memo); *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1567–69 (11th Cir. 1991) (open electronic door). Even if this Court could consider this new, waived argument on reconsideration, the argument is unfounded.

### *Guidance to Counsel*

Having granted Defendant's motion in limine with respect to Federal Rule of Evidence 407 and denied Plaintiffs' motion for reconsideration, the Court provides the following guidelines concerning opening and closing statements and the presentation of evidence. As provided in the May 20 Order, "Plaintiffs are prohibited from presenting evidence of, or making reference to the same, any subsequent remedial action taken by Kohl's in the aftermath of the fall, including, but not limited to mopping and placement of warning sign." May 20 Order at 9. This statement means that Plaintiffs may not refer to subsequent remedial measures during their opening and closing statements, during their case-in-chief, or during cross-examination of defense witnesses. Plaintiffs have indicated that they intend to call the assistant store manager as

a witness in its case-in-chief.  To repeat, Plaintiffs may not attempt to elicit testimony from any witness, including this witness, about floor-mopping or any subsequent remedial measure.  However, if on cross-examination or direct examination in its own case-in-chief, defense counsel opens the door by, for instance, eliciting testimony indicating that Kohl's took no subsequent remedial measures after the accident, then and only then may Plaintiffs use this evidence for impeachment purposes.

      The Court will closely monitor Plaintiffs' statements and questioning of witnesses to ensure compliance with this Court's orders.  Forewarned is forearmed.


Dated: June 2, 2009
Newark, New Jersey

                                          /s/ Harold A. Ackerman
                                          U.S.D.J.